John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel.:    (858) 209-6941
jnelson@milberg.com

*Additional Counsel on Signature Page*
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVSION**

| | |
|---|---|
| JOHN GILES, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>FIGURE TECHNOLOGY SOLUTIONS, INC., and FIGURE TECHNOLOGIES, INC.,<br><br>    Defendants. | Case No. 3:26-cv-1492<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff John Giles ("Plaintiff"), individually, and on behalf of all others similarly situated, bring this action against Defendants Figure Technology Solutions, Inc. and Figure Technologies, Inc. (collectively, "Figure" or "Defendants"). Plaintiff brings this action by and through his attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows.

## I.  INTRODUCTION

   1.  Defendants operate a blockchain-based lending company under the name Figure, which, together with partners including major banks, credit unions, and fintech companies, engages in lending, borrowing, and securities trading.

2.     As part of its operations, Defendants collect, maintain, and store highly sensitive "personally identifying information" ("PII") and "financial account information" from borrowers and prospective borrowers (collectively, the "Account Holders" or the "Class Members").

3.     In January 2026, the notorious hacking group ShinyHunters infiltrated Figure's systems through an employee who fell victim to social engineering attack (the "Data Breach" or "Breach").[1] After gaining access to Figure's systems, the ShinyHunters gang was able to steal 2.5 gigabytes of data, which, *at minimum*, contained Account Holders' full names, home addresses, dates of birth, and phone numbers (collectively "Private Information").[2] The ShinyHunters made a ransom demand to Figure for the stolen data, which Figure did not pay, and the ShinyHunters ultimately uploaded the entirety of the stolen data onto publicly accessible sites on the dark web.[3] Upon review of the uploaded data, HaveIBeenPwned, a website which monitors the dark web for uploads of stolen data and alerts the public, determined that the information belonging to 967,200 Account Holders were contained in the files.[4]

4.     Figure announced that it plans to be notify victims of the Data Breach and offer complimentary credit monitoring in recompense.[5]

---

[1] Lorenzo Franceschi-Bicchierai. *Fintech lending giant Figure confirms data breach*, TechCrunch (Feb. 13, 2026), https://techcrunch.com/2026/02/13/fintech-lending-giant-figure-confirms-data-breach/; *Figure Data Breach*, Have I Been Pwned (Feb. 18, 2026), https://haveibeenpwned.com/Breach/Figure.

[2] Lorenzo Franceschi-Bicchierai. *Fintech lending giant Figure confirms data breach*, TechCrunch (Feb. 13, 2026), available at https://techcrunch.com/2026/02/13/fintech-lending-giant-figure-confirms-data-breach/; Sergiu Gatlan, *Data breach at fintech firm Figure affects nearly 1 million accounts*, BleepingComputer (February 18, 2026), available at https://www.bleepingcomputer.com/news/security/data-breach-at-fintech-firm-figure-affects-nearly-1-million-accounts/.

[3] *Id.*; *Figure Data Breach*, Have I Been Pwned (Feb. 18, 2026), available at https://haveibeenpwned.com/Breach/Figure.

[4] *Id.*; Sergiu Gatlan, *Data breach at fintech firm Figure affects nearly 1 million accounts*, BleepingComputer (February 18, 2026), available at https://www.bleepingcomputer.com/news/security/data-breach-at-fintech-firm-figure-affects-nearly-1-million-accounts/.

[5] Lorenzo Franceschi-Bicchierai. *Fintech lending giant Figure confirms data breach*, TechCrunch (February 13, 2026), available at https://techcrunch.com/2026/02/13/fintech-lending-giant-figure-confirms-data-breach/.

5.    Because Defendants stored and handled Plaintiff's and Class Members' highly sensitive Private Information, the had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

6.    Ultimately, Defendants failed to fulfill this obligation, as unauthorized cybercriminals breached Figure's information systems and databases and stole vast quantities of Private Information belonging to its Account Holders, including Plaintiff and Class Members. The Data Breach—and the successful exfiltration of Private Information—were the direct, proximate, and foreseeable results of multiple failings on the part of Defendants. First, the Data Breach occurred because Defendants failed to implement reasonable security protections to safeguard its information systems and databases. Second, upon information and belief, Defendants failed to timely detect this Data Breach until days or weeks after the breach occurred. This delay exacerbated the scale and scope of the Breach. Third, before the Data Breach occurred, Defendants failed to inform the public that their data security practices were deficient and inadequate. Had Plaintiff and Class Members been made aware of this fact, they would have never provided such information to Defendants.

7.    Defendants' subsequent handling of the breach was deficient and further exacerbated the harm to Account Holders. Chiefly, Defendants, by their own admission[6] still have not provided notice to the 967,200 affected Account Holders. As a result, only the Account Holders who learn of the Breach from the news or other third-party sources are currently aware that their Private Information have been stolen and are able to take remedial and preventive measures against identity theft. Further, Defendants' plan to ameliorate the effects of this data breach with offers of limited credit monitoring is woefully inadequate in the face of a life-long heightened risk of identity theft faced by the Account Holders.

---

[6] Lorenzo Franceschi-Bicchierai. *Fintech lending giant Figure confirms data breach*, TechCrunch (February 13, 2026), available at https://techcrunch.com/2026/02/13/fintech-lending-giant-figure-confirms-data-breach/.

8.     As a result of Defendants' negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiff and Class Members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;
- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;
- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;
- Charges and fees associated with fraudulent charges on their accounts; and
- The continued and increased risk of compromise to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect their Private Information.

9.     Accordingly, Plaintiff brings this action on behalf of all those similarly situated to seek relief for the consequences of Defendants' failures to reasonably safeguard Plaintiff's and Class Members' Private Information; its failure to reasonably provide timely notification to Plaintiff and Class Members that their Private Information had been compromised; and for Defendants' failure to inform Plaintiff and Class Members concerning the status, safety, location, access, and protection of their Private Information.

## II.     PARTIES

**Plaintiff John Giles**

10.     Plaintiff John Giles is a resident and citizen of Chicago, Illinois. Plaintiff Giles became an Account Holder when he provided his PII, including his Social Security number, and his financial account information when he applied for a loan from Figure.

**Defendant Figure Technology Solutions, Inc.**

11.     Figure Technology Solutions, Inc. ("FTS") is a Nevada corporation with its principal place of business located at 100 West Liberty Street, Suite 600, Reno, NV, 89501. FTS conducts business in this District, and throughout the United States.

**Defendant Figure Technologies, Inc.**

12.     Figure Technologies ("FT") is a Delaware corporation with its principal place of business located at 650 California Street, Suite 2700, San Francisco, CA 94108. FT conducts business in this District, and throughout the United States.

## III.     JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class Members exceeds 100, and at least one Class member is a citizen of a state different from at least one Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

14.     This Court has personal jurisdiction over Defendants because Defendant FT is headquartered in this District, and the acts and omissions that give rise to Plaintiff's claims occurred in and arose out of conduct from this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's and Class Members' claims occurred in this District and because Defendant FTS is headquartered in this District.

# IV.     FACTUAL ALLEGATIONS

**A.     Data Breaches Pose Significant Threats**

16.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

17.     The Identity Theft Resource Center's ("ITRC") Annual End-of-Year Data Breach Report for 2024 listed 3,158 total compromises, for which 1,350,835,988 individual victim notices were dispatched.[7] This is just 57 breaches short of 2023's record-breaking total of 3,205 data breaches.[8] But the astronomical figure of 1,350,835,988 victim notices represents a 211% increase over 2023's 353,027,892 victim notices, primarily due to five "mega-breaches" (breaches involving at least 100 million victims) which took place in 2024.[9]

18.     Statista, a German entity that collects and markets data relating to data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 3,205 in 2023.[10] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 1.35 billion in 2024.[11]

---

[7] *2024 Data Breach Report*, Identity Theft Resource Center (Jan. 2025), https://www.idtheftcenter.org/publication/2024-data-breach-report/.

[8] *2023 Data Breach Report*, Identity Theft Resource Center (Jan. 2023), https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[9] *2024 Data Breach Report*, https://www.idtheftcenter.org/publication/2024-data-breach-report/; *2023 Data Breach Report*, https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[10] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2024*, Statista (Updated May 23, 2025), https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed.

[11] *Id.*



Figure 1 – *Number of Data Breaches and Affected Individuals from 2005 to 2024.*[12]

19.     This stolen PII is then routinely traded on dark web black markets as a simple commodity, with online banking login information costing an average of $100, full credit card details and associated details costing between $10 and $100, and comprehensive data packages enabling complete identity theft selling for $1,000.[13]

20.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[14]

---

[12] *Id.*

[13] Ryan Smith, *Revealed-how much is personal information worth on the dark web?*, Insurance News (May 1, 2023), available at https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx.

[14] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[15]

21.     Further, as data breaches become ever more prevalent and as technology advances, computer programs can scan the internet to create a mosaic of information that could be used to link compromised information to an individual in ways in a phenomenon known as the "mosaic effect." By and through this process, names, dates of birth, and contact information such as telephone numbers and email addresses, hackers and identity thieves can access users' other accounts by, for example, bypassing security questions and 2FA security with the comprehensive collection of information at their disposal.

22.     Thus, because of this effect, cybercriminals and other unauthorized parties could use Plaintiff's and Class Members' Private Information to access, inter alia, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members, even when that specific category of information is not compromised in a given breach.

23.     A particularly trouble example of this effect is the development of "Fullz" packages. A "Fullz" packages is a dosser of information that cybercriminals and other unauthorized parties can assemble by cross-referencing the Private Information compromised in a given data breach to publicly available data or data compromised in other data breaches.

---

[15] *Id.*

Automated programs can and are routinely used to create these dossiers and they typically represent an alarmingly accurate and complete profile of a given individual.

24.     Therefore, through the use of these "Fullz" packages, stolen Private Information from this Data Breach can be easily linked to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. Thus, even if certain information such as emails, phone numbers, or credit card or financial account were not compromised in this Data Breach, criminals can easily create a Fullz package to sell for profit.

25.     Upon information and belief, this has already transpired (and will continue to transpire) for Plaintiff and the Class. And any reasonable for any trier of fact will find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

26.     Given the nature of the Data Breach, as well as the length of the time Figure's networks were breached and the long delay in notification to victims thereof, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Private Information can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

27.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[16] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

---

[16] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

28.    To date, Defendants have only stated that they will offered affected individuals limited identity theft monitoring services. However, even these limited services offered are inadequate to protect Plaintiff and Class Members from the threats they will face for years to come, particularly in light of the Private Information at issue here.

29.    Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from misappropriation. As a result, the injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for its Account Holders.

**B.    Defendants Have a Duty and Obligation to Protect Private Information**

30.    Defendants have an obligation to protect the Private Information belonging to Plaintiff and Class Members. First, this obligation was mandated by government regulations and state laws, the FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII. Third, Defendants imposed such an obligation on itself with its promises regarding the safe handling of data. Plaintiff and Class Members provided, and Defendants obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.    FTC Act Requirements and Violations**

31.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

32.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[17] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[18] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[19] Defendants clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

33.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

34.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[17] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 15, 2023).
[18] *Id.*
[19] *Id.*

35.     Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

36.     As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

37.     Defendants were fully aware of the obligation to protect the Private Information of its Account Holders, including Plaintiff and Class Members. Defendants are sophisticated and technologically savvy businesses that rely extensively on technology systems and networks to maintain their business, including storing its Account Holders' PII in order to operate.

38.     Defendants had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendants and Plaintiff and Class Members. Defendants alone had the exclusive ability to implement adequate data and cybersecurity measures to secure and protect Plaintiff's and Class Members' Private Information.

**2.      Industry Standards and Noncompliance**

39.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

40.     Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendants, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

41.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

42.     Defendants should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

43.     Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

### 3.     Defendants' Policies and Promises

44.     Defendants' own privacy policy states that: "We use reasonable precautions, including technical and administrative measures, to protect your Personal Data from loss, misuse, and unauthorized access, disclosure, alteration, or destruction."[20]

45.     Defendants failed to live up to these policies and promises with regards to data privacy and data security as cybercriminals were able to infiltrate Figure's systems and steal the Private Information belonging to Plaintiff and Class Members.

### C.     Plaintiff and the Class Suffered Harm Resulting from the Data Breach

46.     Like any data hack, the Data Breach presents major problems for all affected.[21]

---

[20] *Privacy Policy*, Figure (Upd. October 24, 2025), available at https://www.figure.com/privacy/.
[21] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.

47.    The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[22]

48.    The ramifications of Defendants' failure to properly secure Plaintiff's and Class Members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

49.    According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

50.    Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

51.    Accordingly, Defendants' wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[23] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[24]

52.    There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by

---

[22]*Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

[23] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.

[24] *Id.*

cybercriminals presents a concrete risk that the cybercriminals who now possess Class Members' Private Information will do so at a later date or re-sell it.

53.    Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[25] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[26]

54.    Here, due to the Breach, Plaintiff and Class Members have been exposed to injuries that include, but are not limited to:

    a.    Theft of Private Information;

    b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

    c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

    d.    Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendants' delay in disseminating notice in accordance with state law;

    e.    The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

    f.    The loss of Plaintiff's and Class Members' privacy.

---

[25] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.

[26] *Id.*

55.     Plaintiff and Class Members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within the limited time of credit monitoring offered by Defendants.

56.     As a direct and proximate result of Defendants' acts and omissions in failing to protect and secure Private Information, Plaintiff and Class Members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

57.     Plaintiff retains an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

**G.     PLAINTIFF'S EXPERIENCE**

58.     Plaintiff Giles provided his PII, including his Social Security number, and his financial account information to Defendants when he applied for a loan from Figure. On information and belief, Plaintiff Giles' information was contained in the stolen data and his information was uploaded onto the publicly accessible dark web.

59.     After the Data Breach, Plaintiff Giles experienced a dramatic increase in the number of spam calls, text messages, and emails.

60.     As a result of the Data Breach, Plaintiff Giles has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Giles has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

61.     As a result of the Data Breach, Plaintiff Giles has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling,

and using his Private Information for purposes of identity theft and fraud. Plaintiff Giles is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

62.     Plaintiff Giles suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendants obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

63.     As a result of the Data Breach, Giles anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS REPRESENTATION ALLEGATIONS

64.     Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed
> in the Data Breach.

Excluded from the Class are Defendants, their executives and officers, and any judge assigned to this case, as well as the judge's court staff and immediate family members. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

65.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all Members is impracticable. The exact number and identities of individual Members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. On information and belief, the number

of affected individuals estimated to be 967,200.[27] The Members of the Class will be identifiable through information and records in Defendants' possession, custody, and control.

66.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all Members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a.    When Defendants learned of the Data Breach;

b.    Whether hackers obtained Class Members' Private Information via the Data Breach;

c.    Whether Defendants' response to the Data Breach was adequate;

d.    Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

e.    Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

f.    Whether Defendants owed a duty to safeguard their Private Information;

g.    Whether Defendants breached their duty to safeguard Private Information;

h.    Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

i.    Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

j.    Whether Defendants' conduct violated the FTCA;

k.    Whether Defendants' conduct was negligent;

l.    Whether Defendants' conduct was *per se* negligent;

---

[27] Sergiu Gatlan, *Data breach at fintech firm Figure affects nearly 1 million accounts*, BleepingComputer (February 18, 2026), available at https://www.bleepingcomputer.com/news/security/data-breach-at-fintech-firm-figure-affects-nearly-1-million-accounts/
*Figure Data Breach*, Have I Been Pwned (February 18, 2026), available at https://haveibeenpwned.com/Breach/Figure.

m. Whether Defendants were unjustly enriched;

n. What damages Plaintiff and Class Members suffered as a result of Defendants' misconduct;

o. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages; and

p. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief.

67. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class as Plaintiff and all Members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendants' uniform wrongful conduct. Likewise, the relief to which Plaintiff is entitled is typical of the Class because Defendants have acted, and refused to act, on grounds generally applicable to the Class.

68. <u>Adequacy</u>: Plaintiff is an adequate class representative because his interests do not materially or irreconcilably conflict with the interests of the Class he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor his counsel have any interests that are antagonistic to the interests of other Members of the Class.

69. <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Class individually to effectively redress the wrongs done to them. Even if the Members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

## VI.    <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
### <u>NEGLIGENCE</u>
**(By Plaintiff on behalf of the Class)**

70.    Plaintiff incorporates and reallege all allegations in Paragraphs 1-68 as if fully set forth herein.

71.    Defendants owes a duty of care to protect the Private Information belonging to Plaintiff and Class Members. Defendants also owes several specific duties including, but not limited to, the duty:

    a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.    to protect Account Holders' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.    to have procedures in place to detect the loss or unauthorized dissemination of Private Information in its possession;

    d.    to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA;

    e.    to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.    to promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

72.    Defendants owes this duty because they have a special relationship with Plaintiff's and Class Members. Plaintiff and Class Members entrusted their Private Information to Defendants on the understanding that adequate security precautions would be taken to protect this information.

Furthermore, only Defendants had the ability to protect Figure's systems and the Private Information stored on them from attack.

73. Defendants also owe this duty because industry standards mandate that Defendants protect Account Holders' Private Information.

74. Defendants also owes a duty to timely disclose any unauthorized access and/or theft of the Private Information belonging to Plaintiff and Class Members. This duty exists to provide Plaintiff and Class Members with the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

75. Defendants breached duties owed to Plaintiff and Class Members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

76. Defendants also breached the duties owed to Plaintiff and Class Members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

77. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- Permanent increased risk of identity theft.

78.     Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

79.     In failing to provide prompt and adequate individual notice of the Data Breach, Defendants also acted with reckless disregard for the rights of Plaintiff and Class Members.

80.     Plaintiff and Class Members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
### (By Plaintiff on behalf of the Class)

81.     Plaintiff incorporates and reallege all allegations in Paragraphs 1-68 as if fully set forth herein.

82.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendants to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class Members.

83.     Defendants violated the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class Members' Private Information.

84.     Defendants' failure to comply with the FTCA constitutes negligence *per se*.

85.     Plaintiff and Class Members are within the class of persons that the FTCA is intended to protect.

86.     It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

87.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

88.     Plaintiff and Class Members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT III
## BREACH OF IMPLIED CONTRACT
### (By Plaintiff on behalf of the Class)

89.     Plaintiff incorporates and reallege all allegations in Paragraphs 1-68 as if fully set forth herein.

90.     Plaintiff and Class Members provided Defendants with their Private Information.

91.     By providing their Private Information, and upon Defendants' acceptance of this information, Plaintiff and the Class, on one hand, and Defendants, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

92.     The implied contracts between Defendants and Plaintiff and Class Members obligated Defendants to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiff's and Class Members' Private Information. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above. Defendants also expressly adopted and assented to these terms in public statements, representations and promises as described above.

93.    The implied contracts for data security also obligated Defendants to provide Plaintiff and Class Members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their Private Information.

94.    Defendants breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the Private Information belonging to Plaintiff and Class Members; allowing unauthorized persons to access Plaintiff's and Class Members' Private Information; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiff and Class Members, as alleged above.

95.    As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiff and Class Members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of Private Information, and are entitled to damages in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT
**(By Plaintiff on behalf of the Class)**

96.    Plaintiff incorporates and reallege all allegations in Paragraphs 1-68 as if fully set forth herein.

97.    This count is brought in the alternative to Count III.

98.    Plaintiff and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendants.

99.    Plaintiff and the Class conferred their Private Information to Defendants as part of applying for a loan. Plaintiff and the Class also conferred payment to Defendants in the form of interest payments, borrowing fees, application fees, and other forms as part of their business transaction, which began with the provision of Private Information in the loan application.

100.    Plaintiff and Class Members conferred their Private Information alongside payment with the understanding that the payment was, in part, to be used to implement data security

sufficient to adequately protect their Private Information. And this payment represented a benefit that was to be used for a specific purpose.

101.    Defendants, as a lender, received payment from Account Holders to handle and manage this Private Information. Plaintiff and Class Members conferral of their Private Information was a direct benefit since Defendants were able to use this information for business purposes and financial gain in its lending business. There was an understanding that a portion of the monies Defendants received from the use of this Private Information, was intended to be used to implement data security sufficient to adequately protect this Private Information.

102.    Defendants understood that they were so benefitted.

103.    However, instead of providing a reasonable level of security, training, protocols, and other measures that would have prevented the Data Breach, as described in detail above, Defendants, upon information and belief, knowingly and opportunistically elected to increase their profits at the expense of Plaintiff and Class Members by not expending the money required to do so.

104.    And in failing to expend the monies conferred with the express understanding that it would be used on data security, Defendants knowingly and deliberately enriched themselves at the expense of Plaintiff and Class Members.

105.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class Members in an unfair and unconscionable manner.

106.    Defendants are therefore liable to Plaintiff and the Class for restitution in the amount of the benefit conferred on Defendants as a result of its wrongful conduct, including specifically the value to Defendants of the Private Information that was accessed and exfiltrated in the Data Breach and the profits Defendants received from the use and sale of that information. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all Members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A.   That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B.   That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.   That the Court award Plaintiff and Class Members compensatory, consequential, and general damages in an amount to be determined at trial;

D.   That the Court award Plaintiff and Class Members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

E.   That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

F.   That the Court award pre- and post-judgment interest at the maximum legal rate;

G.   That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

H.   That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the putative Class, demand a trial by jury on all issues so triable.

Date: February 20, 2026                    Respectfully Submitted,

*/s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel.:    (858) 209-6941
jnelson@milberg.com

1

2      Nickolas J. Hagman*
       Alex Lee*
3      **CAFFERTY CLOBES MERIWETHER**
       **& SPRENGEL LLP**
4      135 S. LaSalle, Suite 3210
       Chicago, Illinois 60603
5      Telephone: (312) 782-4880
       Facsimile: (312) 782-4485
6      nhagman@caffertyclobes.com
       alee@caffertyclobes.com
7

8      * *Pro Hac Vice* forthcoming

9      *Attorneys for Plaintiff and the Proposed Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26